37 P.3d 304 (2001)
In re Nick Peter DIAFOS, Debtor.
Robert W. Ryan, Respondent,
v.
Nick P. Diafos, and the marital community comprised of Nick P. Diafos and Jane Doe Diafos, Appellants.
No. 47437-5-I.
Court of Appeals of Washington, Division 1.
December 31, 2001.
*305 John Mele, Ryan Swanson & Cleveland, Seattle, for Appellants.
Guy Beckett, Seattle, for Respondent.
BAKER, J.
Nick Diafos appeals an order of garnishment in favor of Robert Ryan on a judgment arising out of the parties' settlement of an adversary proceeding in Diafos' bankruptcy. Ryan cross-appeals an order quashing his garnishment of the bank account of Diafos' wife. Because the adversary action sounded in tort, we hold that the judgment is a tort judgment, allowing Ryan to collect against Diafos' one-half interest in any personal community property of Diafos' marriage in the event that insufficient separate property exists to satisfy the claim.

*306 I
Nick Diafos was the owner of financially troubled Bellevue Mitsubishi.[1] Over the course of a year, he borrowed $400,000 from Robert Ryan, a business associate, who purchased automobiles and placed them on the Bellevue Mitsubishi lot for resale. Unable to regain solvency despite the loans, Bellevue Mitsubishi and later Diafos, personally, filed for Chapter 7 bankruptcy protection, leaving Ryan exposed not only for the $400,000 loan, but also for $200,000 worth of vehicles he had placed on the Bellevue Mitsubishi lot for resale.
During his bankruptcy proceedings, Diafos married Athena Modonas. They signed a prenuptial agreement, which set forth each spouse's separate property and debts and provided that all income and accumulations after marriage would remain the separate property of the spouse receiving it. They agreed not to create any community estate except by mutual consent effected in writing.
Shortly after the marriage, Ryan filed an adversarial proceeding in the bankruptcy action, naming Diafos and Modonas as defendants and alleging that Diafos' debt to him should not be discharged because it was obtained under false pretenses, false representation, or by actual fraud. He claimed that the financial statements Diafos provided to obtain the loans did not accurately reflect the extent of Diafos' debt and overstated the value of his assets.
Shortly before trial, Ryan and Diafos settled. Diafos agreed to pay $400,000 in installments. Ryan agreed not to file the judgment for six months if Diafos timely made the agreed upon installment payments. At the time the parties entered into the agreement, Diafos had been married for two years, ten months.
The parties performed according to their agreement for nearly five months. Then Diafos ceased making payments and Ryan received notice from Diafos' counsel that Diafos intended to make no more payments because Diafos had now been married for three years and was invoking the protection of RCW 26.16.200. That statute provides that creditors may not reach the earnings and accumulations of debtors who later marry unless the debts have been reduced to judgment within three years of the marriage.
Ryan proceeded to file the judgment and attempted to obtain writs of garnishment for both Diafos' and Modonas' accounts. He was successful as to Diafos' account, but the trial court quashed the writ as to Modonas' account. Diafos appeals and Ryan cross-appeals.

II
The parties' sole dispute in this case is what property, if any, Ryan may reach to satisfy his judgment against Diafos. Diafos argues that the parties' settlement agreement must be characterized as his separate debt to Ryan. Consequently, he argues that RCW 26.16.200 insulates him from the reach of Ryan's collection efforts.
RCW 26.16.200 is a partial abrogation of the historic rule that creditors could only access the separate property of a debtor to satisfy his separate debts.[2] Once a debtor married, all of his earnings and accumulations therefrom became community property and were thus beyond the reach of the creditors. This instant protection from creditors upon marriage gave rise to the term "marital bankruptcy."[3] RCW 26.16.200 now provides, however, that creditors of premarital debt may not only continue to reach the separate property of the debtor spouse, but they may also access the debtor's earnings and accumulations if the debt is reduced to judgment within three years of marriage.[4]
*307 Diafos first argues that his obligation to Ryan constitutes his premarital, separate debt, and that he is therefore insulated from Ryan's collection action because it was not reduced to judgment within three years of his marriage. But the parties' settlement agreement was not the product of a premarital contract debt. It arose out of Ryan's tort claim of fraud against Diafos. The original business debt serves only as a measure of damages.
Diafos next contends that Ryan's consent to judgment must be characterized as his postmarital separate debt because it "is not `based' on Diafos' `tortious conduct.'" In Haley v. Highland,[5] a postmarital judgment was entered upon a verdict that the spouse had committed tortious acts prior to his marriage. The supreme court held that a judgment on premarital tortious conduct is not a debt under RCW 26.16.200 and therefore, the protections of the statute do not apply to the tortfeasor spouse.[6] The court held that the judgment creditor could attach the defendant's one-half interest in community personal property if his separate property was insufficient to satisfy the claim.[7]
Diafos admits in his brief that "Ryan's adversary [proceeding] was based on claims which would have amounted to tortious conduct under Washington law if proven...." But he contends that proof of the claims was necessary to make the consent to judgment one based on tortious conduct. He further contends that because he did not admit to any liability for those claims in the settlement or consent to judgment, the judgment is not one for tortious conduct, but instead a postmarital contract debt. In the context of interpreting or enforcing provisions of a settlement agreement, courts will regard a settlement agreement as a contract.[8] But the validity of the agreement is not at issue here.
For purposes of res judicata,[9] or claim preclusion, a settlement agreement which is approved by the court is considered to be a final judgment on the merits, despite the fact that the issue of liability has not been adjudicated.[10] This is because "on the merits" does not require actual litigation. It is sufficient that the parties might have had their suit disposed of in that manner if they had properly presented and managed their respective cases.[11] In this context, Diafos' judgment sounds in tort.
We know of no requirement that properly characterizing the nature of the judgment for purposes of RCW 26.16.200 is limited to actual proof of the claims made or an admission by the judgment debtor to liability. If the matter had gone to trial, the analysis that the court would have applied to the claim would have been a tort law analysis. The Ninth Circuit Court of Appeals uses the common law elements of the tort of fraud when analyzing exception to discharge cases under 11 U.S.C. § 523.[12] In In re Eashai,[13] the court stated that this practice was reaffirmed by the Supreme Court's determination *308 in Field v. Mans[14] that "when Congress used the term `actual fraud' in § 523(a)(2)(A), Congress was referring to the general common law of torts."[15] In that case, the Court looked to the Restatement (Second) of Torts (1976) to determine the meaning of the term "actual fraud" as used in § 523(a)(2)(A).[16] Because subsections 523(a)(2)(A) and 523(a)(2)(B) are substantially similar, the Ninth Circuit applies the same test to determine whether each subsection applies.[17]
Here, Ryan commenced the adversary proceeding against Diafos in bankruptcy court, claiming that Diafos provided financial statements that were materially false to obtain $400,000 in business loans for his car dealership. Diafos cannot seriously dispute that such a claim is within the scope of 11 U.S.C. § 523, which exempts from discharge in bankruptcy certain obligations of the debtor.[18] Likewise, Diafos properly admits in his brief that such a claim is tortious under governing law. And we note from the record that the consent to judgment, signed by both counsel, which the bankruptcy judge entered on July 7, 2000 states, in part:
[T]his Judgment against Nick P. Diafos shall be and is nondischargeable pursuant to 11 U.S.C. § 523 in this bankruptcy case and in any subsequent bankruptcy case filed by or against Nick P. Diafos. (Emphasis added).
Diafos' admission in the consent to judgment that it is nondischargeable, coupled with his admission in his brief that such claims are tortious in nature, and the law that such claims are tortious, are sufficient to characterize the judgment as one for tortious conduct. We hold that the judgment is the premarital, separate liability of Diafos. To the extent that Diafos' separate property is insufficient to satisfy the judgment, Ryan may reach Diafos' one-half interest in any personal community property of the Diafos/Modonas marriage.[19]
In his cross-appeal, Ryan challenges the validity of Diafos' prenuptial agreement, which precludes the accumulation of any community estate absent written agreement. Although all property acquired during marriage is presumptively community property, spouses may agree to change the character of their property from separate to community or vice versa.[20] Separate property agreements may be used to insulate one spouse from the other spouse's liabilities so long as the agreement does not derogate from the rights of creditors.[21] Thus, those with an existing interest in property at the time a separate property agreement is executed may challenge its validity, but no such protection is available to postagreement creditors.[22]
In this case, although the claim was filed and judgment entered after the execution of the separate property agreement, the conduct giving rise to the claim occurred before Diafos' marriage. Ryan's claim predated the agreement. Consistent with our holding in this case and the established principle that, "`absent express statutory provision, or compelling *309 public policy, the law should not immunize tortfeasors or deny remedy to their victims,'"[23] we conclude that Ryan may challenge the validity of the Diafos/Modonas separate property agreement.
Courts will honor a challenged property agreement between husband and wife if the party asserting the protection of the agreement can demonstrate by clear and convincing evidence (a) the existence of the agreement, and (b) that both spouses have abided by the agreement.[24] Separate property agreements are held to a higher standard than community property agreements because the law favors the creation of community property.[25]
In Kolmorgan v. Schaller,[26] the wife asserted a separate property agreement as protection from garnishment of her earnings in satisfaction of a community judgment. But evidence showed that the husband earned no income and that the wife paid for all community expenses from her income.[27] The court invalidated the agreement because:
It is the duty of each spouse to contribute his or her industry, energy and intelligence to the community; and it would encourage a sorry state of affairs in our domestic relations, if each one of the spouses were allowed, as seems to us to be attempted in this case, to charge the community with all the expenses of the living and expenses of the business, and credit the separate estate with the gross earnings.[[28]]
Under Kolmorgan, for Diafos' agreement to be honored in this context, he must show by clear and convincing evidence that neither he nor Modonas are disproportionately subsidizing community expenses with their separate earnings.
In this case, the trial court's order stated that the evidence presented failed to show violation of the separate property agreement and no evidence showed that the account had been otherwise converted to community property. Because findings of fact must support the trial court's conclusions, we remand for entry of findings of fact on this issue. If the trial court enters findings to support its conclusion, then Ryan may execute on Diafos' separate property, including the separate property deposited into Modonas' account.
Finally, Ryan is entitled to attorney fees as the prevailing party pursuant to RCW 6.27.230. We remand to the trial court to award Ryan his reasonable attorney fees and costs on appeal.
AFFIRMED in part, REVERSED in part, and REMANDED.
COX, J., and WEBSTER, J., concur.
NOTES
[1] The legal business name of Bellevue Mitsubishi was Chorton-Diafos, Inc.
[2] Community PropertyAntenuptial DebtsEliminating Immunity of Earnings and Accumulations of Debtor Spouse, 45 Wash. L. Rev. 191, 192 (1970).
[3] Community Property, supra, at 192.
[4] "Neither husband or wife is liable for the debts or liabilities of the other incurred before marriage, nor for the separate debts of each other,... Provided, That the earnings and accumulations of the husband shall be available to the legal process of creditors for the satisfaction of debts incurred by him prior to marriage.... Provided further, That no separate debt ... may be the basis of a claim against the earnings and accumulations of either a husband or wife unless the same is reduced to judgment within three years of the marriage of the parties...." RCW 26.16.200; Haley v. Highland, 92 Wash.App. 48, 50, 960 P.2d 962 (1998).
[5] 142 Wash.2d 135, 12 P.3d 119 (2000).
[6] Haley, 142 Wash.2d at 152, 12 P.3d 119.
[7] Haley, 142 Wash.2d at 152, 12 P.3d 119.
[8] Riley Pleas, Inc. v. State, 88 Wash.2d 933, 937-38, 568 P.2d 780 (1977).
[9] Application of res judicata requires a final judgment on the merits. It applies where there is an identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. Pederson v. Potter, 103 Wash. App. 62, 69, 11 P.3d 833 (2000), review denied, 143 Wash.2d 1006, 25 P.3d 1020 (2001).
[10] Schlaeppi v. Delaware Trust Co., 525 A.2d 562, 565 (1986); Schoeman v. New York Life Ins. Co., 106 Wash.2d 855, 861, 726 P.2d 1 (1986); Pederson, 103 Wash.App. at 71, 11 P.3d 833 (confession of judgment is final judgment on the merits).
[11] Pederson, 103 Wash.App. at 70, 11 P.3d 833 (citing CenTrust Mortgage Corp. v. Smith & Jenkins, P.C., 220 Ga.App. 394, 469 S.E.2d 466, 469 (1996)).
[12] In re Eashai, 87 F.3d 1082, 1087 (9th Cir. 1996).
[13] 87 F.3d 1082.
[14] 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).
[15] Eashai, 87 F.3d at 1087 (citing Field, 516 U.S. at 70 n. 9, 116 S.Ct. 437).
[16] Field, 516 U.S. at 70, 116 S.Ct. 437.
[17] Siriani v. Northwestern National Insurance Company, 967 F.2d 302, 304 (9th Cir.1992).
[18] Siriani, 967 F.2d at 304 (citing Rubin v. West (In re Rubin), 875 F.2d 755, 759 (9th Cir.1989)); Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir.1991). To recover under § 523(a)(2)(A) or § 523(a)(2)(B), the creditor must show:

(1) a representation of fact by the debtor,
(2) that was material,
(3) that the debtor knew at the time to be false,
(4) that the debtor made with the intention of deceiving the creditor,
(5) upon which the creditor relied,
(6) that the creditor's reliance was reasonable,
(7) that damage proximately resulted from the misrepresentation.
[19] Haley, 142 Wash.2d at 152, 12 P.3d 119.
[20] RCW 26.16.120; Harry M. Cross, The Community Property Law in Washington, 61 Wash. L.Rev. 13, 100-01 (1986).
[21] RCW 26.16.120; see MacKenzie v. Sellner, 58 Wash.2d 101, 361 P.2d 165 (1961) (property settlement agreement valid against judgment entered on postseparation tort committed by husband).
[22] Cross, supra, at 101.
[23] Haley, 142 Wash.2d at 143, 12 P.3d 119 (citing Keene v. Edie, 131 Wash.2d 822, 832, 935 P.2d 588 (1997)).
[24] Washington Family Law Deskbook, § 41.4(3); Kolmorgan v. Schaller, 51 Wash.2d 94, 98, 316 P.2d 111 (1957).
[25] Cross, supra, at 101.
[26] 51 Wash.2d 94, 316 P.2d 111.
[27] Kolmorgan, 51 Wash.2d at 95-96, 316 P.2d 111.
[28] Kolmorgan, 51 Wash.2d at 99, 316 P.2d 111 (quoting Abbott v. Wetherby, 6 Wash. 507, 513, 33 P. 1070 (1893)).